UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| LUCKENBACH TEXAS, INC., | § | |
| *Plaintiff* | § | |
| | § | |
| v. | § | No.  A-19-CV-00567-DH |
| | § | |
| PAUL ENGEL d/b/a | § | |
| LUCKENBACH LODGE, | § | |
| *Defendant* | | |

**ORDER**

Before the Court is Plaintiff Luckenbach Texas, Inc.'s motion seeking partial summary judgment against Defendant Paul Engel d/b/a Luckenbach Lodge, Dkt. 31. Having considered the motion, related filings, and applicable case law, the Court concludes that Plaintiff's motion should be **GRANTED** in its entirety.

I.   BACKGROUND

Plaintiff is a Texas corporation that operates a private entertainment venue in Gillespie County, approximately 12 miles southeast of Fredericksburg, Texas. Dkts. 1, 31-1. The venue, acquired by Plaintiff's predecessor-in-interest in 1970, rose in prominence over the course of the ensuing decade, thanks in large part to its association with the outlaw-style of country music—Jerry Jeff Walker recorded his seminal "Viva Terlingua" album in Luckenbach in 1973, Dkt. 31-1, at 653, and Waylon Jennings's song "Luckenbach, Texas" topped country charts in 1977, *id.* at 658. The site is now a well-known tourist destination featuring a live-music and event venue, a retail store, a dance hall, a saloon, and a restaurant. *Id.* at 2. Guests can pay

1

to lodge overnight at Luckenbach in their own RVs, and Plaintiff is in the process of remodeling a historic home on its property for a bed and breakfast to host visitors. *Id.* at 3. The company also operates a retail store in Fredericksburg known as "Luckenbach on Main" or "Luckenbach Outpost," where visitors can purchase beer, wine, and licensed Luckenbach-branded merchandise. *Id.* at 2.

Plaintiff, who has used "Luckenbach" as a service mark since 1971, filed for registration of the mark in 1978. *Id.* at 3, 228. The USPTO registered the mark for entertainment services in 1982. *Id.* at 228. Plaintiff later registered the motto "Everybody's Somebody in Luckenbach" and its signature trademark Luckenbach logos. *Id.* at 229-31.

Defendant Paul Engel began operating the Luckenbach Lodge in 2014. Dkt. 39-1, at 96. The lodge, which lies on property adjacent to Plaintiff, is located on land that has been in Engel's family since 1848. *Id.* Plaintiff's owner, Kit Patterson, initiated a discussion with Engel in 2014 upon learning of Engel's plan to operate a business known as Luckenbach Lodge. Dkt. 31-1, at 3. Patterson contends that he expressed to Engel his concern that the Lodge's use of "Luckenbach" in its name could create confusion between Plaintiff's mark and the lodge's operations. *Id.* Patterson followed up with Engel in writing later that year and in 2015. *Id.* The parties resumed discussions in-person and in writing in 2017 and 2018. *Id.*

Plaintiff sued Engel in June 2019. Dkt. 1. In its suit, Plaintiff alleges common-law and statutory causes of action for trademark infringement, unfair competition, and dilution. *Id.* at 6-9. Plaintiff seeks to enjoin Defendant's use of "Luckenbach

Lodge" (along with any other mark or name that may cause confusion with Plaintiff's marks) and damages. *Id.* at 9. In his Answer, Defendant generally denies Plaintiff's causes of action, and he asserts the affirmative defenses of fair use, laches, unclean hands, and "other affirmative defenses" not yet stated. Dkt. 6.

Plaintiff now moves for partial summary judgment. In particular, Plaintiff alleges it has proven Defendant's liability on Plaintiff's trademark infringement and unfair competition causes of action as a matter of law. Dkt. 31. Plaintiff did not move for summary judgment on its dilution claim. *Id.* Plaintiff also seeks summary judgment on Defendant's affirmative defenses—namely, fair use, laches, and unclean hands. *Id.*

## II.     LEGAL STANDARD

Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Washburn*, 504 F.3d at 508. Further, a court "may not make

credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *Id.* The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23. This rule applies equally to affirmative defenses—plaintiffs are entitled to summary judgment if they produce sufficient evidence negating an essential element of defendant's affirmative defense. *Id.* at 323.

### III. PLAINTIFF'S OBJECTIONS

Before addressing the substance of Plaintiff's motion for partial summary judgment, the Court first rules on Plaintiff's objections to the evidence Defendant attached to his opposition. *See* Dkt. 40, at 6-7 (objections contained within Plaintiff's reply brief).

#### A. The Private Investigator's Letter and Accompanying Exhibits

Plaintiff raises authentication and hearsay objections to a letter and several accompanying exhibits provided by a private investigator hired by Defendant. *See* Dkt. 40 at 6 (objecting to the letter, Ex. DD (Dkt. 39-1, at 32), and attached Exhibits A-CC (*id.* at 1-31), DD at 10-53 (*id.* at 41-84), and EE (*id.* at 85-94)). As noted in Plaintiff's objections, the letter is unsworn and unauthenticated. Defendant's own declaration apparently attempts to remedy this by stating in paragraphs 3 and 4 of his declaration that the exhibits were kept either by Defendant personally, or by the Lodge, "in the course of regularly conducted activity; and were made part of the regular practice of that activity." Dkt. 39-1, at 95. This assertion, however, is belied by the statement of Defendant's private investigator that he was "contracted to collect" this same evidence. *See id.* at 32. Plaintiff is correct that the private investigator's letter and the documents and witness statements attached to it are all hearsay or various levels of hearsay-within-hearsay, and Defendant has not provided

5

the Court with any authority bringing this evidence within an exception to those rules or the rules requiring evidence to be properly authenticated.[1]

Nonetheless, the Court concludes that some of the exhibits provided by Defendant are either not hearsay or fall within exceptions to the hearsay rule and are therefore admissible. In particular, the Court finds that the exception for public records of vital statistics, Fed. R. Evid. 803(9), applies to the birth and death records provided by Defendant. *See* Dkt. 39-1, at 5-21 (Exs. C-S). And the Court finds that Rule 803(8)'s exception for public records, liberally construed in Defendant's favor, applies to the rainfall records attached as Defendant's exhibit T. *Id.* at 22. The affidavits from the various Gillespie County residents, *id.* at 33-40 (Ex. DD at 2-9), are properly sworn and are therefore admissible under Federal Rule of Civil Procedure 56. The transcriptions of those affidavits, *id.* at 41-45 (Ex. DD at 10-14), are not, however, and therefore are not admissible. As for the various screenshots and pictures attached, *id.* at 1-4, 23-31, 46-94 (Exs. A-B, U-CC, DD at 15-53, EE), the Court concludes that Defendant's statement that they are exact duplicates of the originals satisfies any authentication concerns, and that the documents themselves are not being offered for the truth of the matter asserted therein, and thus are not hearsay.

The Court, therefore, SUSTAINS Plaintiff's objections to the private investigator's letter, Dkt. 39-1, at 32 (Ex. DD, at 1), and the unsworn transcriptions,

---

[1] The Court notes that Plaintiff's objections have been on file since May 2021, and Defendant has not filed, nor requested leave to file, any sort of responsive argument in the several months since the objections were served.

6

*id.* at 41-45 (Ex. DD at 10-14), and will not consider this evidence when addressing the merits of Plaintiff's motion. The Court OVERRULES Plaintiff's remaining objections to these exhibits.

### B.   Defendant's Declaration

Plaintiff also objects to statements in Defendant's declaration regarding the community's perception of Luckenbach as a geographical location and Defendant's reference to Luckenbach as a geographical descriptor. Dkt. 40, at 6-7 (objecting to ¶¶ 6, 8 of Defendant's declaration (Dkt. 39-1, at 96-97)). The Court OVERRULES these objections.

### IV.   DISCUSSION

Plaintiff moves for summary judgment on (1) its trademark-infringement claims arising under federal and state law; (2) its common-law claim for unfair competition/false advertising; and (3) Defendant's affirmative defenses of (a) fair use, (b) laches, and (c) unclean hands. The Court addresses each in turn.

### A.   Trademark Infringement

Plaintiff asserts causes of action for trademark infringement arising under the Lanham Act, 15 U.S.C. § 1114, et seq., and Texas law, Tex. Bus. & Comm. Code § 16.102. "A trademark infringement action under Texas common law is analyzed in the same manner as a Lanham Act claim." *Viacom Int'l v. IJR Capital Investments, L.L.C.*, 891 F.3d 178, 184 (5th Cir. 2018). Both claims require proof that: (1) the plaintiff owns a legally protectable mark; and (2) the defendant's use of the mark creates a likelihood of confusion as to source, affiliation, or sponsorship. *Id.* at 185.

1. Whether Plaintiff Owns a Legally Protectable Mark

Plaintiff contends that its "Luckenbach" mark[2] is legally protectable as a matter of law because Plaintiff owns an incontestable registration. Dkt. 31, at 7-9. A mark's registration on the principal register "confers important legal rights and benefits on trademark owners." *Matal v. Tam*, 137 S. Ct. 1744, 1753 (2017). Registration: (1) "serves as constructive notice of the registrant's claim of ownership of the mark[;] (2) is prima facie evidence of the validity of the registered mark and of the registration of the mark, of the owner's ownership of the mark, and of the owner's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the certificate; and (3) can make a mark incontestable once a mark has been registered for five years." *Id.* (internal quotations and citations omitted). A registered mark attains incontestable status when it "has been in continuous use for five consecutive years subsequent to the date of such registration and is still in use in commerce, there is no adverse finding or pending proceeding against the registration, and a Declaration of Incontestability is filed with the USPTO." *Castro v. Entrepreneur Media, Inc.*, No. 1:10-CV-000695-LY, 2011 WL 13234330, at *4 (W.D. Tex. Apr. 28, 2011) (internal quotation omitted) (citing 15 U.S.C. § 1065).

---

[2] LUCKENBACH, Registration No. 1,188,120 (Dkt. 31-1, at 228). Plaintiff has registered three other Luckenbach-related marks. *See* Dkt. 31-1, at 229-31. The vast majority of Plaintiff's argument, however, focuses on Defendant's alleged infringement of this first-registered "Luckenbach" mark, so that will be where the Court focuses its analysis. As discussed below, the Court finds that Plaintiff should prevail on its motion for partial summary judgment based on Defendant's alleged infringement of this particular mark.

Plaintiff here registered the Luckenbach marks on the principal register and filed the requisite affidavits to make the registrations incontestable after five years of use. Dkt. 31-1, at 3, 228-31. As for the "Luckenbach" mark, it is not only registered without an adverse or pending proceeding, but Plaintiff and its predecessors have used it since 1971—long before Defendant opened his lodge. This mark is therefore conclusively owned by Plaintiff and is legally protectable as a matter of law. *See Castro*, 2011 WL 13234330, at *4 (granting motion to dismiss request for a declaration that registrations were not incontestable where party had "satisfied all statutory requirements for incontestability").

Defendant's opposition does not lead the Court to a different conclusion. "[A]n incontestable registration is *conclusive* evidence … of the registrant's exclusive right to use the … mark in commerce" under 15 U.S.C. § 1115(b). *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 117 (2004) (emphasis added). Defendant argues that "Luckenbach as used by both Plaintiff and Defendant 'is a geographical term denoting locality, and cannot be exclusively appropriated as a trademark because such a term is generic or descriptive, and anyone who can do so truthfully is entitled to use it.'" Dkt. 39, at 1 (quoting *In Re Newbridge Cutlery Co.*, 776 F.3d 854, 858 (Fed. Cir. 2015)). Much of the argument that follows in his opposition focuses on his contention that "Luckenbach"[3] is not entitled to trademark

---

[3] Defendant states that the USPTO "has denied all attempts to trademark just the name Luckenbach." Dkt. 39, at 3. Defendant cites no authority for this assertion, and it appears to conflict directly with Plaintiff's USPTO registration of the mark "Luckenbach." Dkt. 31-1, at 228.

9

protection because the name is associated with a community and geographical location that long pre-dated Plaintiff's trademark registration.

Defendant's Luckenbach-is-merely-descriptive argument is foreclosed by the mark's incontestability. Incontestability "preclude[s] an infringement action from being defended on the grounds that the mark is merely descriptive." *All. for Good Gov't v. Coal. for Better Gov't*, 901 F.3d 498, 510 (5th Cir. 2018) (internal quotations omitted). Incontestable marks "are conclusively presumed to be nondescriptive or to have acquired secondary meaning." *Soweco, Inc. v. Shell Oil Co.*, 617 F.2d 1178, 1185 (5th Cir. 1980); *see also Coach, Inc. v. Eye Candy Shoes & Accessories*, No. 3:09-CV-2169-O, 2010 WL 11561845, at *4 (N.D. Tex. Dec. 16, 2010) (finding marks incontestable and thus legally protectable as a matter of law). Based on the foregoing, the Court concludes Plaintiff has established that it owns a legally protectable mark as a matter of law.

      2.    Whether Defendant's Use of the Mark Creates a Likelihood of Confusion

A finding of incontestability "does not relieve a plaintiff from his burden of proving infringement." *All. for Good Gov't*, 901 F.3d at 510 n.14. To obtain summary judgment on trademark infringement, the plaintiff must also prove as a matter of law a likelihood of confusion between the mark and its source, affiliation, or sponsorship. *Viacom Int'l Inc. v. IJR Cap. Invs., LLC*, 242 F. Supp. 3d 563, 570 (S.D. Tex. 2017), *aff'd*, 891 F.3d 178 (5th Cir. 2018) (citing 15 U.S.C. § 1051; *Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188, 193 (5th Cir. 1998)). In *Soweco*, the Fifth Circuit set out seven factors to consider when determining whether a likelihood of confusion exists:

    1. The strength of the plaintiff's mark;

    2. The degree of similarity between the plaintiff's and the defendant's marks;

    3. The similarity of the plaintiff's and the defendant's goods or services;

    4. The nature of customers and retail outlets of the plaintiff and the defendant;

    5. The similarities in advertising by the plaintiff and the defendant;

    6. The defendant's knowledge and intent in adopting its mark; and,

    7. Actual confusion as a result of the defendant's mark.

617 F.2d at 1185. The Fifth Circuit has also added "an eighth factor, the degree of care employed by consumers." *S. Co. v. Dauben Inc.*, 324 F. App'x 309, 318 (5th Cir. 2009). Summary judgment is appropriate on the confusion element where the "record compels the conclusion that the movant is entitled to judgment as a matter of law." *Viacom*, 891 F.3d at 192. "No factor is dispositive, and a finding of a likelihood of confusion does not even require a positive finding on a majority of these 'digits of confusion.'" *Viacom*, 242 F. Supp. 3d at 571 (quoting *Elvis Presley*, 141 F.3d at 194).

    Defendant's opposition does not address these factors individually, and arguably does not contest several of them at all. Defendant does not appear to challenge the strength of Plaintiff's mark or the degree of similarity between Plaintiff's mark "Luckenbach" mark and Defendant's use of "Luckenbach Lodge." Nor does Defendant take on the numerous examples of actual confusion cited by Plaintiff in its motion. *See* Dkt. 31, at 13-14 (collecting several examples of individuals referring to Plaintiff's business when reviewing Defendant's business online).

Relatedly, Defendant does not address the eighth factor cited by Plaintiff regarding the degree of care employed by consumers. *See id.* at 14.

In sum, Plaintiff submitted evidence and argument in support of factors 1, 2, 7, and 8, and Defendant did not challenge Plaintiff's proof on these factors. The Court, therefore, finds that these factors weigh in Plaintiff's favor.

Though not addressing his argument to a particular factor, Defendant claims throughout his opposition that his use of "Luckenbach Lodge" is not among the "protect[a]ble interests" identified in Plaintiff's marks. *See* Dkt. 39, at 3-4, 10, 13. Defendant contends that his lodging operation is distinct from the entertainment services and merchandising protected by Plaintiff's marks. *Id.* Defendant also argues that he provides a service that cannot be had at Plaintiff's business without using an RV, and that Defendant does not sell entertainment, food, or merchandise at Luckenbach Lodge. *Id.* at 10. Defendant further contends that "[a]ny assertion that Defendant is using the legally protectable marks of Plaintiff is a fact issue." *Id.* at 14. Taking this in a light most favorable to Defendant, the Court will consider these arguments addressed to factors 3 through 6.

At the outset, the Court observes that the vast majority of the admissible evidence provided by Defendant—the birth and death records, the rainfall records, residents' affidavits, and the various screenshots and pictures attached—supported his "Luckenbach is merely descriptive" argument. None of this evidence is addressed to the factors courts consider when determining a likelihood of confusion. And Defendant's conclusory assertion—based solely on his own declaration—that a fact

12

issue exists on this matter, *see* Dkt. 39, at 14, is not well-taken. *Turner*, 476 F.3d at 345 ("Conclusory statements are not competent evidence to defeat summary judgment."). Defendant's argument, unsupported by any reference to case law or competent evidence, cannot defeat Plaintiff's motion for summary judgment. *See, e.g.*, *Henslee v. Wal-Mart Disc. Cities*, 154 F.3d 416, 1998 WL 526615, at *3 (5th Cir. 1998) (holding the "unsupported conclusions of the self-interested [party] … do not create a material issue of fact").

The record here on the likelihood-of-confusion element of trademark infringement "compels the conclusion that the movant is entitled to judgment as a matter of law." *Viacom*, 891 F.3d at 192. Even making all inferences in Defendant's favor, as the Court is required to do, *see id.*, the Court concludes that Plaintiff prevails on this analysis as a matter of law. As noted above, Defendant did not come forward with any competent evidence contesting the strength of Plaintiff's mark, the degree of similarity between Plaintiff's and Defendant's marks, the substantial evidence of actual confusion in the marketplace, or the degree of care employed by consumers. The Court finds the uncontested evidence of actual confusion particularly compelling in the context of the dispute here. As the Fifth Circuit observed in *Soweco*, "while very little proof of actual confusion would be necessary to prove the likelihood of confusion, an almost overwhelming amount of proof would be necessary to refute such proof." 617 F.2d at 1186.

On the Defendant's side of the ledger, the Court has Defendant's own conclusory assertion that his lodging business does not create confusion with

13

Plaintiff's business, which primarily addresses Plaintiff's evidence regarding the similarity of their businesses, but also arguably goes to the nature of their respective customers and retail outlets, the similarities in their advertising by the plaintiff and the defendant, and Defendant's knowledge and intent. Defendant's self-serving, conclusory statement, however, is too thin a reed to support the heft of Plaintiff's proof on all of the factors, but particularly the evidence of actual confusion. *See Viacom*, 891 F.3d at 198 (affirming summary judgment on likelihood of confusion).

Having concluded that Plaintiff has established both elements of its trademark-infringement claim as a matter of law, the Court finds that summary judgment on this cause of action (under both federal and state law) should be granted.

### B. Unfair Competition/False Advertising

As Plaintiff notes in its motion, "[t]he issues in a common law trademark infringement action under Texas law are no different than those under federal trademark law." *Sport Supply Group, Inc. v. Columbia Cas. Co.*, 335 F.3d 453, 461 (5th Cir. 2003). Generally, the same evidence that supports an action for trademark infringement under the Lanham Act also supports an action for unfair competition. *Philip Morris USA Inc. v. Lee*, 547 F. Supp. 2d 667, 678 (W.D. Tex. 2008). Defendant does not argue otherwise.

Because the Court has already concluded that Defendant is infringing Plaintiff's mark, summary judgment is also appropriate on Plaintiff's unfair competition claim. *See id.* at 678-79 ("Having already concluded that Miyagi infringed Plaintiff's marks, the Court finds that Plaintiff is entitled to summary judgment on

its common law unfair competition claim."); *see also Viacom*, 891 F.3d at 198 (affirming summary judgment on unfair competition); *Viacom*, 242 F. Supp. 3d at 575 (granting summary judgment based on same confusion analysis and trademark infringement holding).

### C. Defendant's Affirmative Defenses

#### 1. Fair Use

Defendant's opposition makes no mention of Plaintiff's motion for summary judgment on Defendant's fair-use affirmative defense. For that reason alone, summary judgment is proper here, where Plaintiff has carried its initial burden to provide evidence and argument in support of its motion. *See, e.g.*, *Broad. Music, Inc. v. Bentley*, No. SA-16-CV-394-XR, 2017 WL 782932, at *2 (W.D. Tex. Feb. 28, 2017) ("[I]f a nonmoving party fails to address or respond to a fact raised by the moving party and supported by evidence, then the court may consider the fact as undisputed. Such undisputed facts may form the basis for a summary judgment." (internal citation omitted)).

Nonetheless, the Court also concludes that summary judgment on Defendant's fair-use defense is proper on the merits. First, the Court has already concluded that Plaintiff has established a likelihood of confusion as a matter of law—that conclusion defeats Defendant's fair-use defense. *See, e.g., Bd. of Supervisors for La. State Univ. Agric. & Mech. Coll. v. Smack Apparel Co.*, 550 F.3d 465, 488 (5th Cir. 2008) ("The right of fair use is limited, however, insofar as the use cannot be one that creates a

likelihood of confusion as to source, sponsorship, affiliation, or approval." (internal quotation omitted)).

And even if the fair-use defense were not already foreclosed by the Court's likelihood-of-confusion ruling, summary judgment would still be appropriate. The fair-use defense is a statutory one available only "where a defendant can show that its use of the term: (1) is not as a service mark; (2) is descriptive of the services it provides; and (3) is fair and in good faith." *Pebble Beach Co. v. Tour 18 I, Ltd.*, 942 F. Supp. 1513, 1553 n.37 (S.D. Tex. 1996), *aff'd as modified*, 155 F.3d 526 (5th Cir. 1998) (citing *Soweco*, 617 F.2d at 1185; 15 U.S.C. § 1115(b)(4)). Here, even if Defendant's evidence created a fact question regarding second and third elements, Defendant cannot credibly argue—and has not offered any evidence in support of an argument—that he is using "Luckenbach" in any way other than as part of his service mark. Summary judgment, therefore, is appropriate on Defendant's fair-use defense. *Celotex*, 477 U.S. at 323.

    2.    Laches

Plaintiff also moves for summary judgment on Defendant's laches affirmative defense. "Laches is an inexcusable delay that results in prejudice to the defendant." *Abraham v. Alpha Chi Omega*, 708 F.3d 614, 622 (5th Cir. 2013) (internal quotation omitted). The defense requires proof of: (1) delay in asserting trademark rights, (2) lack of excuse for the delay, and (3) undue prejudice to the defendant caused by the delay. *Id.* "Every federal district in Texas has examined this issue and determined that the applicable statute of limitations for Lanham Act claims—and thus the basis

to evaluate any delay and whether it is excusable—comes from Texas' four-year statute of limitations period for fraud claims." *Heritage All. v. Am. Policy Roundtable*, No. 1:18-CV-00939-RP, 2020 WL 7028972, at *7 (W.D. Tex. Nov. 30, 2020), *adopted at* 2021 WL 799310 (Jan. 5, 2021). The "period of delay" for a laches defense ends when the defendant receives a cease-and-desist notice. *See Elvis Presley*, 141 F.3d at 205 ("Any acts after receiving a cease and desist letter are at the defendant's own risk because it is on notice of the plaintiff's objection to such acts."); *RE/MAX Int'l, Inc. v. Trendsetter Realty*, LLC, 655 F. Supp. 2d 679, 710 (S.D. Tex. 2009) ("[T]he period begins on the date the plaintiff obtained actual or constructive knowledge of the allegedly infringing use and ends when the trademark owner objects to the defendant's use and gives notice of the objection by, for example, a cease-and-desist letter.").

Defendant does not contest Plaintiff's evidence that Plaintiff first made its objection to Defendant's use of Plaintiff's mark in 2014, the same year Defendant opened his lodge. *See* Dkt. 31-1, at 3. And Defendant does not deny receiving the emails Plaintiff sent Defendant in September 2014 and January 2015, in which Plaintiff explicitly stated his trademark-infringement objections. *See* Dkt. 31-1, at 135. Instead, Defendant complains that he did not receive the cease-and-desist letters that Plaintiff mailed to Defendant after these initial meetings and emails. Dkt. 39-1, at 96. Whether Defendant received these mailings, however, is irrelevant under these circumstances. Defendant does not challenge Plaintiff's evidence that Plaintiff gave

notice to Defendant of his objection very shortly after learning of Defendant's use of its mark, and that Defendant knew of Plaintiff's objection.

But even if Defendant's alleged failure to receive these letters raised a fact question regarding when he acquired knowledge of Plaintiff's objection, Defendant has not produced any evidence of any prejudice, let alone undue prejudice, that he has suffered as a result of the alleged delay. For all of these reasons, summary judgment is appropriate on Defendant's laches affirmative defense.

### 3. Unclean Hands

Plaintiff finally moves for summary judgment on Defendant's unclean-hands affirmative defense. This defense requires proof that Plaintiff "committed an unconscionable act immediately related to the equity the party seeks in respect to the litigation." *Petro Franchise Sys. v. All Am. Props.*, 607 F. Supp. 2d 781, 799 (W.D. Tex. 2009) (internal quotation and citation omitted); *Healthpoint, Ltd. v. Ethex Corp.*, 273 F. Supp. 2d 817, 848-49 (W.D. Tex. 2001) ("A Lanham Act defendant must show that plaintiff's conduct is inequitable and that the conduct relates to the subject matter of [plaintiff's] claims."). "Plaintiff's alleged wrongdoing will not bar relief unless the defendant establishes personal injury resulting from plaintiff's conduct." *Healthpoint*, 273 F. Supp. 2d at 847.

Defendant did not address Plaintiff's motion regarding Defendant's unclean-hands affirmative defense, and the Court cannot discern any argument or evidence in Defendant's opposition that could be read to raise a fact issue on any of the elements of this defense. The Court concludes that Plaintiff has carried its burden on

18

Defendant's unclean-hands defense, and in the absence of any opposition from Defendant, summary judgment is appropriate on this ground. *Broad. Music*, 2017 WL 782932, at *2.

## V.     CONCLUSION

Based on the foregoing discussion, the Court hereby **GRANTS** Plaintiff's motion for partial summary judgment in its entirety. Based on the Court's review of the pleadings, this ruling appears to dispose of the liability portion of all but one of Plaintiff's claims against Defendant, and all of Defendant's affirmative defenses, leaving the merits of Plaintiff's dilution claim (which was not addressed in the motion), along with Plaintiff's damages, costs, fees, and injunctive relief to be determined at a future date.

SIGNED December 6, 2021.

DUSTIN M. HOWELL
UNITED STATES MAGISTRATGE JUDGE