IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| LUCKENBACH TEXAS, INC. | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 1:19-cv-567-DH |
| | § | |
| PAUL ENGEL d/b/a LUCKENBACH | § | |
| LODGE | § | |

**LUCKENBACH'S CHALLENGE TO DEFENDANT'S PRIVILEGE LOG**

Plaintiff Luckenbach Texas, Inc. ("Luckenbach") files this Challenge to Defendant Paul Engel d/b/a Luckenbach Lodge's ("Engel") Privilege Log and respectfully requests that the Court order Engel to produce certain documents he withheld and claims privileged on his log.

## I.   INTRODUCTION

In stark contrast to the narrative Engel has presented to the Court—that he is just a peach farmer defending against "an aggressive, multi-front legal campaign"—the documents and emails detailed in his 1,038 entry log—***including 148 that Engel denied existed***—show quite the opposite. The reality is the Engel and "Luckenbach Lodge" are pawns in Stewart Skloss's scheme to steal the famous Luckenbach name and brand for the large-scale development project he is trying to bring to the Hill Country.

Skloss, a Houston businessman, purchased a "gentleman's farm" outside Fredericksburg four years ago and has attempted to rebrand himself as a Hill Country native by claiming to be a distant relation of the founding German families. After a couple of years of trying to persuade Luckenbach to jointly launch the "Luckenbach Distillery," Luckenbach declined, warning Skloss "to avoid any use of Luckenbach name in any manner." But Skloss decided to launch it anyway— stealing what he could not buy—and started developing his new, infringing "Luckenbach Road" whiskey and entertainment enterprise.

Skloss started *his actual multi-front attack* against Luckenbach at the USPTO by attempting to trademark "Luckenbach," despite Luckenbach's longstanding registrations for its marks. Then, three days after Luckenbach filed suit to stop Engel from using and profiting from its marks, Skloss began texting and emailing Engel with, as described in the privilege log, his comments, recommendations, and questions on the strategy for the lawsuit. *See e.g,* Ex. A, Privilege Log, # 859, 877-883, 972, 974, 981, 973, 1034-1038. These communications are not privileged and should have been produced. Instead, Skloss and Engel denied these communications existed until they were ordered to log them. *See* Ex B, Skloss Dep. 205:17-21 (Q: Did you write -- did you e-mail him? A: No.  Paul and I -- I see him -- we share a fence.  I get peaches, I get peach ice cream, whatever -- we do -- we talk on a regular basis.);[1] Dkt. 77 at 6 ("LTI questioned Skloss about such communications in March, and as he explained, there were brief discussions across a shared fence, not written communications to produce.").

Beginning in December 2019, Skloss began copying Engel on emails with Skloss's trademark counsel related to the filing of various trademark applications and protesting Luckenbach's pending trademark application. Ex. A, Privilege Log, # 877, 885-890, 922-936. Skloss's disclosure of his attorney-client communications to Engel voluntarily waived any attorney-client client privilege protecting those documents.

Luckenbach filed suit against Skloss on September 15, 2021. Thereafter, Skloss and his litigation counsel, Nick Guinn, and Engel and his counsel at the time, James Chapman, began to meet. On or about November 4, 2021, Guinn, Chapman, Engel, and Skloss allegedly executed a joint defense agreement Ex. A, Privilege Log, #734, 735. Engel has refused to produce the joint

---

[1] Skloss also mischaracterized the timing and scope of their conversations. *See* Ex B, Skloss Dep. 157:10-18 (testifying that Engel and Skloss did not talk about collaborating until September 2021); 157:21-158:15 (falsely stating that the only thing Engel and Skloss discussed was the fact that Engel had been sued and the reasons for it and that Engel "already had his law firm" when he approached Skloss).

defense agreement or any of the communications related to the negotiations of the agreement.[2] He also claims that all of his communications with Skloss and Skloss's counsel during this period are protected by the common legal interest doctrine. But the common legal interest doctrine does not apply to Skloss and Engel.

On December 23, 2022, Guinn reached out to Graves Dougherty, Hearon & Moody ("GDHM") and introduced those attorneys to Engel. Ex. A, Privilege Log, # 208, 635, 636, 638, 640. From this date forward, GDHM claims it was "retained to appear for Engel" and "provided legal advice and representation regarding LTI's trademarks claims against Skloss." Dkt. 77 at 63, ¶ 4. GDHM argues that all communications between Skloss, Engel, and their counsel from this date forward are protected by the "joint representation" attorney-client privilege. *Id.* at 8.

At his deposition on March 11, 2021, however, Skloss repeatedly denied under oath that Mr. Kennedy or Graves Dougherty represented him. *See, e.g.,* Ex. B, Skloss Dep. Tr. 222:8-223:3 (Q: Do Pete or Rudy represent you. A: I don't believe so.). For his part, Engel has testified only that he has a joint defense agreement with Skloss, not that he consented to joint representation. Ex. C, 6/9/22 Hearing Tr. 243. According to the privilege log, the joint defense agreement was not shared with GDHM until March 14, 2022, three days after the deposition where Skloss refused to answer questions about his conversations with Engel's lawyers on the basis of a "joint defense privilege." Ex. A, Privilege Log, # 189, 190, 307, 564, 565; Ex. B, Skloss Dep. at 171:6-172:5.

The remainder of the entries in the log show, not that the parties were collaborating on matters that furthered their common legal interest, but that Skloss—not Engel—is running **this** litigation. There are at least 10 emails from Skloss with his opinions on Engel's motion to supplement his answer and 15 emails from Skloss about LTI's response to that motion and even

---

[2] Entries related to the joint defense agreement are at Ex. A, Privilege Log, # 154, 155, 189, 190, 191, 192, 195, 196, 307, 308, 309, 311, 312, 313, 475, 476, 510, 564, 565, 566, 567, 568, 569, 570, 571, 572, 728, 734, 735.

communications about strategy for the mediation between Engel and LTI. Ex. A, Privilege Log, # 698-608, 658, 659, 661, 662, 665, 666, 669, 670, 673, 674, 676, 736, 737, 739. There are *zero* emails from Engel on these topics. Moreover, emails from Skloss cannot be characterized as work product even though Engel has logged them that way.

## II. THE CHALLENGED ENTRIES

Engel's log contains 1,038 withheld documents and communications. Luckenbach sent Engel the entries it was challenging or had questions about on September 29, 2022. Ex. D, Email chain. After five days of back and forth in an attempt to reach an agreement, Engel ultimately agreed to produce only two emails. *See id.; see also* Ex. A, Privilege Log, # 960-964. As a result, Luckenbach is forced to seek the Court's intervention regarding the following log entries that are not privileged or for which the privilege had has been waived, but that Engel refuses to produce:

1, 3, 4, 7, 9, 19, 44, 51, 75, 77, 78, 79, 82, 91, 95, 96, 104, 105, 108, 109, 113, 116, 117, 126, 128, 130, 131, 133, 141, 147, 151, 154, 155, 157, 158, 159, 160, 161, 162, 163, 178, 183, 188, 191, 192, 194, 195, 196, 204, 208, 209, 210, 211, 214, 216, 217, 218, 219, 220, 221, 222, 223, 226, 227, 230, 232, 253, 254, 256, 257, 258, 259, 261, 277, 278, 279, 280, 281, 282, 286, 287, 288, 289, 308, 309, 310, 311, 312, 313, 314, 316, 317, 318, 319, 320, 321, 323, 324, 325, 326, 327, 328, 329, 339, 354, 355, 356, 358, 359, 361, 362, 363, 364, 378, 385, 390, 391, 392, 393, 409, 417, 418, 424, 426, 427, 428, 429, 432, 433, 437, 438, 439, 440, 458, 459, 460, 461, 462, 463, 464, 475, 476, 510, 514, 516, 518, 519, 520, 521, 522, 523, 525, 530, 531, 532, 533, 534, 535, 537, 538, 539, 545, 546, 547, 548, 549, 553, 554, 555, 559, 560, 561, 562, 563, 566, 567, 568, 569, 570, 571, 572, 573, 574, 575, 576, 578, 579, 590, 593, 594, 597, 598, 599, 600, 601, 602, 603, 604, 605, 606, 607, 608, 611, 612, 613, 614, 615, 616, 617, 619, 620, 621, 622, 626, 627, 628, 629, 630, 633, 634, 635, 636, 638, 640, 645, 647, 657, 658, 659, 661, 662, 663, 665, 666, 669, 670, 673, 674, 676, 678, 681, 684, 695, 713, 714, 715, 728, 732, 734, 735, 736, 737, 739, 742, 743, 744, 745, 746, 747, 748, 749, 750, 751, 752, 754, 755, 756, 788, 792, 800, 802, 803, 808, 809, 810, 811, 832, 856, 857, 858, 859, 860, 861, 862, 874, 875, 876, 877, 878, 879, 880, 881, 882, 883, 884, 885, 886, 887, 888, 889, 890, 891, 892, 893, 894, 895, 896, 897, 898, 899, 900, 901, 902, 903, 904, 905, 906, 907, 908, 909, 910, 911, 912, 913, 914, 915, 916, 917, 918, 919, 920, 921, 922, 923, 924, 925, 926, 927, 928, 929, 930, 931, 932, 933, 934, 935, 936, 937, 938, 939, 940, 941, 942, 943, 944, 945, 946, 947, 948, 949, 950, 951, 952, 953, 954, 955, 956, 957, 958, 959, 960, 961, 962, 963, 964, 965, 967, 969, 970, 971, 972, 973, 974, 975, 976, 977, 978, 979, 980, 981, 982, 983, 984, 985, 986, 987, 988, 989, 990, 991, 992, 993, 994, 995, 996, 997, 998, 999, 1000, 1001, 1002, 1003, 1004,

1005, 1006, 1007, 1008, 1009, 1010, 1011, 1012, 1013, 1014, 1015, 1016, 1017, 1018, 1019, 1020, 1021, 1022, 1023, 1024, 1025, 1026, 1027, 1028, 1029, 1030, 1031, 1032, 1033, 1034, 1035, 1036, 1037, 1038.[3]

As explained further below, these documents and communications are not privileged for multiple reasons:

- Including Skloss on emails between Engel and Engel's counsel and Engel's potential counsel waived the attorney-client privilege;

- The common legal interest doctrine does not apply between Skloss and Engel because they are not co-defendants or potential co-defendants;

- Even if the common legal interest doctrine applied, documents and communications solely related to strategy, pleadings, or discovery in either the Skloss litigation or the Engel litigation are not in furtherance of a common legal interest and not protected;

- Communications between and among Engel, Skloss, and counsel related to trademark filings with the USPTO or any TTAB proceedings are not work product and would not fall within the narrow scope of the common legal interest doctrine;

- Work product created by or for Skloss for use in the Skloss litigation is not protected as work product in this case;

- Skloss's mental impressions are not work product;

- Third-party communications are not privileged, including with Evan Bell of Luckenbach Cattle Company, the TABC, and the Gillespie County Commissioner; and

- The joint defense agreement is not privileged and, at a minimum, should be produced to the Court in camera along with communications negotiating the agreement.

### III. ARGUMENT AND AUTHORITIES

Luckenbach incorporates by reference as if set forth herein the argument and authorities from its Motion to Compel, Reply, and Advisory. Dkt. 74, 78, and 81.

**A. Documents exchanged before September 15, 2021 are not privileged.**

The log makes clear that these documents and communications are not attorney-client privileged. Most of the entries are not communications between a client and a lawyer.[4] *See EEOC*

---

[3] Attached as Exhibit E is a log with just the challenged entries sorted by number (E-1) and by date (E-2) for the Court's convenience.

[4] The emails and texts between just Engel and Skloss are at Ex. A, Privilege Log, # 856, 874, 875, 876, 896, 898, 900, 902, 904, 905, 907, 909, 910, 911, 913, 915, 916, 918, 920, 922, 928, 931, 933, 937, 943, 944, 945,

*v. BDO USA, L.L.P.*, 876 F.3d 690, 695 (5th Cir. 2017) (For a communication to be protected under the attorney-client privilege, the proponent "must prove: (1) that he made a confidential communication; (2) to a lawyer or his subordinate; (3) for the primary purpose of securing either a legal opinion or legal services, or assistance in some legal proceeding."). Where emails involve lawyers, any privilege claim was waived by the inclusion of a third-party, either Engel or Skloss. *See Cantu v. TitleMax, Inc.*, No. 5:14-cv-628-RP, 2015 WL 5944258, at *5 (W.D. Tex. Oct. 9, 2015). For example, there are a number of emails from Skloss to Engel with Skloss's counsel from Boyar Miller and Conley Rose carbon copied. Ex. A, Privilege Log, # 877-895. The inclusion of Engel waived the attorney-client privilege.[5]

Engel designated 74 of the entries as work product even though the descriptions plainly show that they are not related to this lawsuit. The work product doctrine applies to "documents and tangible things that are prepared in anticipation of litigation or for trial ***by or for another party or its representative***." FED. R. CIV. P. 26(b)(3)(A) (emphasis added). "Documents prepared for one who is not a party to the present lawsuit are wholly unprotected by Rule 26(b)(3) even though the person may be a party to a closely related lawsuit in which he will be disadvantaged if he must disclose in the present suit." *La Union Del Pueblo Entero v. Abbott*, No. SA-21-CV-00844-XR, 2022 WL 1667687, at *8 (W.D. Tex. May 25, 2022) (quoting 8 Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE & PROCEDURE § 2024 (3d ed. 1998)). The entries marked work product were not prepared by or for Engel or his representatives. They were prepared by or for Skloss. Furthermore, they were prepared for proceedings with the USPTO, not for this or any other

---

946, 948, 965, 967, 969, 970, 971, 972, 973, 974, 975, 976, 977, 978, 979, 980, 981, 982, 983, 984, 985, 986, 987, 988, 989, 990, 991, 992, 993, 994, 995, 996, 997, 998, 999, 1000, 1001, 1002, 1003, 1004, 1005, 1006, 1007, 1008, 1009, 1010, 1011, 1012, 1013, 1014, 1015, 1016, 1017, 1018, 1019, 1020, 1021, 1022, 1023, 1024, 1025, 1026, 1027, 1028, 1029, 1030, 1031, 1032, 1033, 1034, 1035, 1036, 1037, 1038.

[5] There is no common legal interest protection between defendants in separate suits or between plaintiffs, as Skloss and his entities are in the TTAB proceedings.

litigation. *See United States v. El Paso Co.*, 682 F.2d 530, 542 (5th Cir. 1982) ("The work product doctrine focuses only on materials assembled and brought into being in anticipation of litigation."). The work product doctrine does not apply to these entries.

Engel also designated all of these entries as "C/I", meaning protected by the common legal interest doctrine—but they are not. There are no supporting affidavits or evidence of a joint defense or common interest agreement, written or oral, before September 15, 2021. Both the Guinn and Kennedy declarations state those agreements were negotiated and entered after the Skloss lawsuit was filed. See Dkt. 77 at Ex. 6, ¶ 5; Dkt. 84-1 at Ex. A, ¶ 5. And Skloss also testified that he did not discuss collaborating with Engel until after he was sued on September 15, 2021. *See* Ex. B, Skloss Dep. 157:24-158:6.

**B. Documents exchanged between September 15, 2021 and December 22, 2022 are not privileged.**

During this period of time, Engel claims that his communications with Skloss and Skloss's counsel are protected by the common legal interest doctrine. The common legal interest doctrine does not apply between Skloss and Engel. *See Ferko v. Nat. Ass'n for Stock Car Auto Racing, Inc.*, 219 F.R.D. 396, 401 (E.D. Tex. 2003) ("The common interest doctrine applies to cases involving ***co-defendants***, an insurer and an insured, and a patentee and licensee.").

Even if the common legal interest doctrine applied (and it does not), documents and communications solely related to strategy, pleadings, or discovery in either the Skloss litigation or the Engel litigation are not in furtherance of the common legal interest, nor are communications between and among Engel, Skloss, and counsel related to trademark filings with the USPTO or any TTAB proceedings. *See BCR Safeguard Holdings, L.L.C. v. Morgan Stanley Real Estate Advisory, Inc.*, 614 Fed. Appx. 690, 704 (5th Cir. 2015) (The common legal interest doctrine protects only those communications that "further a joint or common interest," not all

communications between the parties.); *see also Windsor v. Olson*, No. 3:16-cv-934-L, 2019 WL 77228, at 10 (N.D. Tex. Jan. 2, 2019) (compelling production in a similar situation).

### C. Documents exchanged between December 23, 2021 and March 11, 2022 are not privileged.

In response to the motion to compel, Engel argued that his communications with Skloss after December 23, 2021, when Skloss engaged GDHM to represent Engel, are privileged because of their joint representation by GDHM. Dkt. 77 at 7. As explained in Luckenbach's Reply, Engel has not met his burden to prove this would apply to the disclosure of his attorney-client privileged communications with Skloss. Dkt. 79. Namely, there is no evidence that Skloss and Engel ever consented to a joint representation.

### D. Documents exchanged after March 11, 2022 are not privileged.

Engel additionally asserts that almost all of these documents and emails are work product, including the many emails Skloss sent. Work product protection "insulates ***a lawyer's*** research, analysis of legal theories, mental impressions, notes, and memoranda of witnesses' statements." *Dunn v. State Farm Fire & Cas. Co.*, 927 F.2d 869, 875 (5th Cir. 1991) (emphasis added). Skloss's mental impressions about this lawsuit are not work product.

### E. Emails involving other third parties are not privileged.

The presence of third parties eliminates the intent for confidentiality and, therefore, emails including third parties are not privileged. *La Union Del Pueblo Entero*, 2022 WL 1667687, at *4. The following entries include emails sent or received by third parties and they should be produced: 178, 194, 314, 458, 459, 460, 461, 462, 463, 464, 574, 575, and 576.

**F. The Court should review the joint defense agreement and emails related to its negotiations to verify Engel's privilege claims.**

The two attorney declarations filed thus far raise, at best, questions about where the privilege lies. As Engel is relying on the joint defense agreement for most of his privilege claims, the Court should review that agreement to determine its scope. The agreement and communications negotiating the agreement are at the following entries: 154, 155, 189, 190, 191, 192, 195, 196, 307, 308, 309, 311, 312, 313, 475, 476, 510, 564, 565, 566, 567, 568, 569, 570, 571, 572, 728, 734, and 735.

## IV.   PRAYER

Luckenbach respectfully asks this Court to conduct an *in camera* inspection of the entries it has identified from Defendant's privilege log. Luckenbach asks the Court to determine whether these documents are protected from disclosure under the asserted privileges, to compel production if they are not, and to grant such other and further relief to which Luckenbach may show itself entitled.

Respectfully submitted,

**BURGESS LAW PC**
Karen C. Burgess
State Bar No. 00796276
Email: kburgess@burgesslawpc.com
Katie Dolan-Galaviz
State Bar No. 24069620
Email: kgalaviz@burgesslawpc.com
Stacy Rogers Sharp
State Bar. No. 24052109
Email: ssharp@burgesslawpc.com
404 West 13th Street
Austin, Texas 78701-1825
Telephone: (512) 482-8808
Facsimile: (512) 900-6325

Dated: October 5, 2022                By:  */s/ Karen C. Burgess*
                                            Karen C. Burgess

**ATTORNEYS FOR PLAINTIFF
LUCKENBACH TEXAS, INC.**

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule CV-7(i), I hereby certify that counsel for Luckenbach conferred with counsel for Defendants via email on September 29 and 30 and October 1 and 2, 2022 regarding the relief sought in this Motion, and could not reach an agreement on the relief sought herein.

                                            */s/ Karen C. Burgess*
                                            Karen C. Burgess

## CERTIFICATE OF SERVICE

I hereby certify that, on October 5, 2022, the foregoing was electronically filed with the Court by using the Western District of Texas' CM/ECF filing system, which provided notice of the filing to all CM/ECF participants.

                                            */s/ Karen C. Burgess*
                                            Karen C. Burgess